## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 19 2018, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chad A. George,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | February 19, 2018<br><br>Court of Appeals Case No.<br>39A01-1709-CR-2131<br><br>Appeal from the Jefferson Circuit Court<br><br>The Honorable Darrell M. Auxier, Judge<br><br>Trial Court Cause No.<br>39C01-1512-F4-1235 |

**Brown, Judge.**

Chad A. George appeals his sentence for burglary as a level 3 felony, criminal confinement as a level 6 felony, and domestic battery as a class B misdemeanor. George raises one issue which is whether his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

## Facts and Procedural History

In a prior memorandum decision, we summarized the facts of this case as follows:

> [T.C.] and George had been in an "on and off relationship" for several years. (Tr. at 45.) In November 2015, an incident occurred in which George became physically aggressive toward [T.C.], including choking her, throwing her, hitting her in the face, and attempting to force her to swallow medication. [T.C.] sustained some bruising to her face from this altercation.
>
> On December 23, 2015, [T.C.] heard a knock on her apartment door, and opened it expecting to see one of her neighbors. Instead, George was at the door and said, "Bitch, I bet you didn't think you was [sic] going to see me again." (*Id.* at 50.) George pushed his way into [T.C.'s] apartment despite her attempts to close the door. George said he just wanted to talk to [T.C.]. [T.C.] told George to leave her apartment, but he refused. [T.C.] could smell alcohol on his breath. George was upset with [T.C.] because she was "talking to these other people" and damaging a case pending against him. (*Id.* at 51.)
>
> When [T.C.] attempted to exit the apartment, George shoved her, pulled her back by her hair, and caused them both to fall back into a table knocking over a candle and breaking a chair. George then placed his hands around [T.C.'s] neck. Once released, [T.C.] made a run for her door and placed her right knee into a gap between the door and the door frame to keep

George from shutting it. [T.C.] shouted, "No, Chad. No, no, no." (*Id*. at 52.)

The pair agreed to walk out of the apartment. Once outside, [T.C.] attempted to "make a beeline [sic]" for her door, (*id*.), to get back inside her apartment, but George grabbed her with one hand on her throat and the other hand pulling her tank top. (*Id*.) A neighbor called 911 after witnessing the altercation and hearing [T.C.] screaming.

[T.C.] began walking toward a gas station because "there's [sic] cameras if anything happens." (*Id*. at 53.) George was walking after [T.C.] until law enforcement arrived and ordered the pair to stop. The pair was instructed to approach Officer Decker. [T.C.] approached first, and Officer Decker saw her lip was bloody and her shirt was ripped open, exposing her breasts. According to Officer Decker, [T.C.] was behaving "excited, scared to death, [and] unintelligible." (*Id*. at 89.) While [T.C.] waited by the patrol car, Officer Decker placed George in handcuffs until other officers arrived. Officer Decker detected the smell of alcohol on George and observed George was unsteady on his feet, so he secured George in the back of the patrol car.

Officer Decker took [T.C.] back to her apartment and spoke with her there. He noticed a broken chair, an upturned end table, and candle wax on the carpet. Officer Decker took photographs of [T.C.'s] appearance and injuries including: "a defensive wound on the forearm," (*id*. at 93), blood on her lip, and bruising and redness on her face. [T.C.] indicated at trial that the bruising to her face "was still healing up from the November incident," and was not from December 23. (*Id*. at 60.) Officer Decker also collected [T.C.'s] torn tank top for evidence.

*George v. State*, No. 39A01-1612-CR-2740, slip op. at 1-2 (Ind. Ct. App. June 29, 2017).

[3] The State charged George, as amended, with Count I, burglary as a level 3 felony; Count II, criminal confinement as a level 5 felony; Count III, attempted strangulation as a level 6 felony; and Count IV, domestic battery as a class A misdemeanor. A jury found George guilty on Counts I, II, and IV and not guilty on Count III.

[4] On October 5, 2016, the court held a sentencing hearing. On November 3, 2016, the court issued its sentencing order. The court found the following aggravating factors: George "has a 2014 conviction for Criminal Confinement as a class C felony" with respect to which he "confined the same victim herein, [T.C.] without her consent, which resulted in bodily injury" and for which he "was sentenced to and served a four-year sentence," demonstrating that his incarceration "did not rehabilitate him and that a short period of incarceration is not likely to rehabilitate him"; that he "has a prior firearm conviction," demonstrating that he "poses a greater threat to others"; and that he "was out on bond on charges of Battery Resulting in Serious Bodily Injury and Strangulation in Jennings County," demonstrating that "he has a strong proclivity for domestic abuse and is a danger to others." Appellant's Appendix Volume 2 at 185-186. The court did not find any mitigating factors. The court sentenced George to twelve years for his burglary conviction, four years for his criminal confinement conviction, and one year for his domestic battery conviction, ordered that his sentences for burglary and criminal confinement be served consecutive to each other, and ordered that his sentence for domestic

battery be served concurrently with the other sentences, for an aggregate sentence of sixteen years.

[5]     On appeal, we found the evidence was sufficient to support George's burglary conviction. *George*, No. 39A01-1612-CR-2740, slip op. at 3. We further found that George's convictions of burglary resulting in bodily injury, criminal confinement resulting in bodily injury, and domestic battery were all proven using the same bodily injury and that the State conceded this subjected him to double jeopardy. *Id.* We accordingly reduced George's conviction for criminal confinement from a level 5 felony to a level 6 felony and his conviction for domestic battery from a class A misdemeanor to a class B misdemeanor and remanded for the trial court to resentence him. *Id.* George also argued that his aggregate sentence was inappropriate, but we did not consider the issue as we remanded for resentencing. *Id*. at 3 n.4.

[6]     On remand, the trial court adopted the findings regarding mitigating and aggravating circumstances as set forth in its November 3, 2016 sentencing order, entered George's conviction for criminal confinement as a level 6 felony and sentenced him to two years for that conviction, entered his conviction for domestic battery as a class B misdemeanor and sentenced him to six months for that conviction, and ordered these sentences to be served concurrently with each other and consecutive to his twelve-year sentence for burglary as a level 3 felony for an aggregate sentence of fourteen years.

## *Discussion*

[7] The issue is whether George's aggregate sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[8] George argues that he was thirty-one years old at sentencing, that his conviction for dealing in a sawed-off shotgun was five years old, that his prior offenses were caused in whole or in part by his ongoing alcohol abuse issues, and that while incarcerated awaiting trial he engaged in substance abuse / mental health counseling. He argues that he served in the military, was steadily employed until a few weeks prior to his arrest, maintained good conduct in jail while awaiting trial and held a trustee position, and was the sole caregiver for his ailing mother. He also argues that T.C.'s injuries and fear, while upsetting and regrettable, do not exceed the scope of the impact anticipated by the crime and nothing in the commission of the crime exceeded the elements of the offense as to warrant an enhanced penalty.

[9] The State maintains that nothing about the nature of the offenses warrants a revision of George's sentence, that T.C. was terrified and knew if she stayed in her house that she would be dead, and that T.C. suffered flashbacks and emotional trauma and would not answer her door unless she was armed with a

weapon. The State further maintains George's convictions and charges reflect poorly on his character, arguing that he had a prior felony conviction for the criminal confinement of the same victim, had two misdemeanor convictions, and had pending charges in Jennings County. The State also argues, despite knowing he had a substance abuse addiction, George never sought treatment on his own.

[10] A person who commits a level 3 felony shall be imprisoned for a term between three and sixteen years with the advisory sentence being nine years, Ind. Code § 35-50-2-5, a person who commits a level 6 felony shall be imprisoned for a term between six months and two and one-half years with the advisory sentence being one year, Ind. Code § 35-50-2-7, and a person who commits a class B misdemeanor shall be imprisoned for a term of not more than 180 days. Ind. Code § 35-50-3-3.

[11] Our review of the nature of the offenses reveals that, a month after George and T.C. were in a physical altercation, George showed up at T.C.'s residence smelling of alcohol and said, "[b]itch, I bet you didn't think you was going to see me again," pushed his way into T.C.'s residence despite her attempts to stop him, refused to leave, stated that T.C. was hurting his case by talking to other people, shoved her, pulled her back by her hair and caused them to fall and break a chair, and placed his hands around her neck. Transcript at 50. After they exited the residence and T.C. attempted to reenter the home, George grabbed her throat and pulled her tank top, ripping it down to nearly her stomach. Officer Decker testified that he "immediately [saw] the blood on

[T.C.'s] lip and her . . . shirt ripped to expose her breast" and that T.C. was "[e]xcited, scared to death, [and] unintelligible when she spoke." *Id*. at 89. T.C. sustained injuries including a defensive wound on her forearm and blood on her lip. When asked her reason for agreeing to go outside, T.C. replied "[b]ecause I knew if I stayed in that apartment and that door shut again I wouldn't live to tell anything." *Id*. at 78. At sentencing, T.C. testified that "to this day I can't handle anybody knocking on my door without coming without a weapon because I think it's him." *Id*. at 176. One of T.C.'s neighbors testified that he heard a loud scream, looked across the street, and observed a woman struggling and that it appeared she was being dragged in and was being choked. He testified that he yelled across the street to ask if she needed help, she answered yes, the situation seemed very serious, and he feared for her life.

[12] Our review of the character of the offender reveals that, according to the presentence investigation report (the "PSI"), George's criminal history includes dealing in a sawed-off shotgun in 2010 for which he received one year of incarceration with 345 days suspended; public intoxication in 2012 for which he received four days of incarceration; and criminal confinement resulting in bodily injury to anyone other than the defendant as a class C felony in 2014 for which he was sentenced to four years of incarceration. The PSI further indicates that George was charged with battery resulting in serious bodily injury as a level 5 felony, strangulation as a level 6 felony, and criminal mischief as a class B misdemeanor in Jennings County in 2015.

[13] The PSI provides that, at the time of his arrest, George had been unemployed for about two weeks and that he enlisted in the Army in 2008 and received an Other than Honorable Discharge. The PSI provides, with respect to substance abuse, that George reported that he first drank alcohol at age thirteen but did not start to drink regularly until after his discharge from the military; he has previously reported he was a "functioning alcoholic" and his alcohol use had never caused him any problems with employment; he reported he first used marijuana at age sixteen but denies being a regular user; he has completed ADEPT, a substance abuse education program; he stated he was drinking on the night he was arrested; and he has not sought or received any other treatment. Appellant's Appendix Volume 4 at 7.

[14] T.C. indicated that she was the victim of George's previous criminal confinement offense. George indicated that he was an excessive drinker, that he attended classes in jail and received a certificate, and that he would benefit from additional substance abuse treatment. George indicated he was a trustee for about two months while in jail and introduced notes from a captain and a sergeant at the jail regarding his good behavior while in jail. George also indicated that his mother was in poor health and that, if the court were to release him, he would be able to help her travel to her appointments. On cross-examination, George indicated he did not seek any substance abuse treatment on his own. He indicated he was released from being a trustee because he allegedly drank hand sanitizer. He acknowledged telling his mother "[y]ou leave me out to dry, mom. I swear to God I'll never f------ speak to you again"

because he wanted paid counsel. Transcript at 157. When asked the reason he received an other than honorable discharge from the military, George testified "[f]ailure to adjust" and "[f]ailure to adjust to the military way of life I guess would be the best description." *Id*. at 162. He indicated that he was in the Army for about three years, he was charged with being AWOL during that time, and he was AWOL for months.

[15] After due consideration, we conclude that George has not sustained his burden of establishing that his aggregate sentence is inappropriate in light of the nature of the offense and his character.

### *Conclusion*

[16] For the foregoing reasons, we affirm George's aggregate sentence.

[17] Affirmed.

Baker, J., and Riley, J., concur.